UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ibrahim Mumid, Fadumo Muse, Fahmo
Ahmed, Safiya Mohamed, Iftu Jibril,
Maymuna Muktar Osman, Misbah
Ibrahim, Nijaac Said, Amal Mohamed,
Shamsa Ali Mohamed, Yurub Siyad,

Muna Mohamed, and Amina Harun,

     Plaintiffs,

  v.

Abraham Lincoln High School, the
Institute for New Americans, and
Special School District No. 1,

     Defendants.

**MEMORANDUM OPINION AND ORDER**
Civ. No. 05-2176 ADM/JJG

---

Robert J. Kolstad, Esq., Minneapolis, MN; Robert T. Snider, Esq., Snider Law Firm, Ltd., Minneapolis, MN; and Daniel R. Shulman, Esq., Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, MN, argued on behalf of Plaintiffs.

Paula Weseman Theisen, Esq. and Bradley M. Jones, Esq., Meagher & Geer, Minneapolis, MN, argued on behalf of Defendant The Institute for New Americans.

Margaret A. Skelton, Esq., Ratwik, Roszak & Maloney, P.A., Minneapolis, MN, argued on behalf of Defendant Special School District No. 1.

---

## I. INTRODUCTION

  On December 16, 2005, oral argument before the undersigned United States District Judge was heard on Defendant The Institute for New Americans' ("the Institute") (doing business under the assumed name Abraham Lincoln High School ("Lincoln")) Amended Motion to Dismiss [Docket No. 32] and Defendant Special School District No. 1's (Minneapolis Public Schools or "MPS") (collectively "Defendants") Amended Motion to Dismiss [Docket No. 28]. Ibrahim Mumid ("Mumid"), Fadumo Muse ("Muse"), Fahmo Ahmed ("Ahmed"), Safiya

Mohamed ("Safiya"), Iftu Jibril ("Jibril"), Maymuna Muktar Osman ("Osman"), Misbah Ibrahim ("Ibrahim"), Nijaac Said ("Said"), Amal Mohamed ("Amal"), Shamsa Ali Mohamed ("Shamsa"), Yurub Siyad ("Siyad"), Muna Mohamed ("Muna"), and Amina Harun ("Harun")[1] (collectively "Plaintiffs") filed an Amended Complaint [Docket No. 23], alleging that both Defendants violated Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.13, and that Defendant MPS violated the Equal Educational Opportunity Act ("EEOA"), 20 U.S.C. § 1703. For the reasons set forth herein, both Motions are denied.

## II. BACKGROUND[2]

The Plaintiffs are eleven females and two males, ranging in age from twenty to twenty-four, who immigrated to the United States from either Ethiopia or Somalia. Am. Compl. at 1-3. All Plaintiffs either formerly attended or are currently attending Lincoln. Id. Lincoln is a school for immigrants who speak English as a second language. Id. at 3. Lincoln is managed by the Institute, a non-profit corporation, pursuant to a contract with MPS. Id. at 4.

On June 9, 2005, the Minnesota Department of Education found Lincoln had violated state and federal law by failing to properly identify students in need of special education services and failing to have a system in place to facilitate such identification. Id. at 4-6. Lincoln students have a 17% passing rate on the Minnesota Basic Skills Test in comparison to a 40% state-wide

---

[1] The Plaintiffs are referred to individually by their last name, except that in instances in which more than one individual has the same last name, the Plaintiffs are referred to by their first name.

[2] The facts in the Background section are as alleged in the Complaint as this is a rule 12(b)(6) motion.

pass rate for students who speak English as a second language, and Lincoln has a high "age out" rate, the rate at which students must leave school because of their age, but prior to graduating. Id. Lincoln students that failed to make progress in their classrooms were placed in Level 9B. Id.

Plaintiffs' principal complaint is that Defendants failed to take appropriate action to overcome language barriers with Plaintiffs and other Lincoln students by 1) failing to establish and implement an appropriate curriculum for students learning English as a second language, 2) failing to provide special education testing and services to them, 3) warehousing students in Level 9B, a program from which students have virtually no chance to graduate, and 4) failing to communicate to them the requirements for graduating from Lincoln and for obtaining a high school diploma. Id. at 7. Shamsa, Osman, and Ahmed allege that they were given papers, tests, and classroom instruction in English without translation, despite their inability to understand English. Id. at 7-8. Mumid and Said are hearing disabled, and Ahmed, Jibril, Osman, Amal, Shamsa, Siyad, and Muna are functionally illiterate and likely suffer from a learning disability, yet they were allegedly never provided with special education services. Id. at 9-12. Mumid, Said, Ahmed, Jibril, Osman, Amal, and Shamsa aver that they were placed in Level 9B and were not expected to graduate. Id. at 12-13. Muse, Safiya, Jibril, Ibrahim, and Harun allege that they were never informed of the classes required to graduate. Id. at 13-14. Harun alleges her credits from a Kenya school were not accepted, and when she complained, Lincoln told her that those who speak out will be deported. Id. at 15.

## III. DISCUSSION

**A.**     **Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for lack of subject matter jurisdiction, or for failure to state a claim upon which relief can be granted.  Fed. R. Civ. Pro. 12(b)(1), (6).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.  "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."  Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

**B.**     **Abandoned Claims**

In their original Complaint [Docket No. 1], Plaintiffs alleged claims against both Defendants for violation of the EEOA, the MHRA, and the Minnesota Constitution, § 1, Art. XIII.  After Defendants filed their initial Motions to dismiss with respect to the claims alleged, Plaintiffs amended their Complaint, withdrawing the Minnesota Constitution claims and the EEOA claim against the Institute, and adding a claim against both Defendants for violation of Title VI.  Defendants subsequently amended their Motions, but the Institute's amended Motion still asks for dismissal of the Complaint alleging that the EEOA and the relevant part of the Minnesota Constitution do not apply as a matter of law.  The Defendants' Motions relating to the

withdrawn claims are denied as moot.

C.  **MPS's Motion to Dismiss**

In its Motion to Dismiss, MPS asks for dismissal of the first, second, and third causes of action to the extent Plaintiffs assert a claim that MPS failed to provide special education testing and services to Plaintiffs, and of the claims of the following nine Plaintiffs on the same basis: Mumid, Said, Ahmed, Jibril, Osman, Amal, Shamsa, Siyad, and Muna. MPS alleges that Plaintiffs' claims regarding a failure to provide special education services could and should have been brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, which requires Plaintiffs to first exhaust administrative remedies before filing a lawsuit. As a result, MPS argues the Court lacks subject matter jurisdiction over Plaintiffs' claims.

Plaintiffs respond that the gravamen of their Complaint is national origin discrimination based on Defendants' failure to take appropriate action to overcome language barriers, and that failure to provide special education testing and services is just one in a series of ways Defendants discriminated against them on account of their national origin. Plaintiffs further argue that their national origin discrimination claims could not have been brought under the IDEA and therefore are not "IDEA type claims." Plaintiffs claim MPS is simply mischaracterizing their complaint.

"Under well-established judicial interpretations of the IDEA," complainants are generally required to first exhaust administrative remedies before they can seek judicial review of their IDEA claims. Blackmon v. Springfield R-XII Sch. Dist., 198 F.3d 648, 655 (8th Cir. 1999). MPS has cited authority to support that the "exhaustion requirement also applies if the [complainant] chooses to bring an IDEA type claim under another statute, such as the ADA [Americans with Disabilities Act] or Section 504 [of the Rehabilitation Act], or the

Constitution." S.A.S. v. Hibbing Pub. Schs., 2005 WL 1593011, at *2 (D. Minn. July 1, 2005); see also Cudjoe v. Indep. Sch. Dist. No. 12, 297 F.3d 1058, 1063 (10th Cir. 2002); Weber v. Cranston Sch. Comm., 212 F.3d 41, 49-50 (1st Cir. 2000); Waters v. South Bend Cmty. Sch. Corp., 1999 WL 528173, at *3 (7th Cir. July 22, 1999).  But see M.P. v. Indep. Sch. Dist. No. 721, No. 05-1584, slip op. at 4 (8th Cir. Mar. 8, 2006) ("Our precedent indicates that even when a plaintiff's IDEA claim fails for lack of jurisdiction, a Section 504 claim may still be considered.").

In this case, Plaintiffs have not brought claims under the IDEA, the ADA, or Section 504. Plaintiffs do not allege disability discrimination but rather allege that failure to provide special education services is one form of discrimination they suffered based on national origin. Plaintiffs' prayer for relief buttresses that Plaintiffs seek relief for national origin discrimination, not disability discrimination or a lack of special education services: Plaintiffs seek damages and an injunction requiring MPS to close Lincoln.  At this early stage of the proceedings, given the high standard for dismissal motions, the Court denies MPS's Motion.  However, subject matter jurisdiction can be revisited at any stage of the proceedings, and the Court will reconsider its jurisdiction in the future if it appears that Plaintiffs are pursuing IDEA claims under the guise of national origin discrimination.

**D.     The Institute's Motion to Dismiss**

The Institute alleges that the claims against it must be dismissed because it has not "discriminated" against the Plaintiffs within the meaning of the MHRA and Title VI.  The Institute avers that in order to discriminate, it must have treated Plaintiffs, non-native English speakers, differently from other similarly situated individuals at the school who are native

English speakers, but uniformly treating all individuals badly is not unlawful discrimination. The Institute further states that Plaintiffs' claims are better characterized as ones for "educational malpractice"—a cause of action not recognized by law—rather than discrimination.

Plaintiffs respond that in the context of discrimination, it is sufficient to allege that the adverse action was taken on account of the Plaintiffs' protected status, and that Plaintiffs are only required at this stage to satisfy the notice pleading standard of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs further allege that the Institute should not be entitled to immunity from the poor treatment of all of its immigrant students merely because all of the students are members of the same protected class.

The MHRA states in relevant part "it is an unfair discriminatory practice to discriminate in any manner in the full utilization of or benefit from any educational institution, or the services rendered thereby, to any person because of . . . national origin . . . ." Minn. Stat. § 363A.13, subd. 1. Title VI states "[n]o person in the United States shall, on the ground of . . . national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." In the absence of direct evidence of discriminatory intent, the familiar McDonnell Douglas burden shifting framework utilized in the analysis of Title VII claims is used to analyze claims under Title VI and the MHRA. Freeman v. Fahey, 374 F.3d 663, 666 (8th Cir. 2004); Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000); Brantley v. Indep. Sch. Dist. No. 625, 936 F. Supp. 649, 657 n.16 (8th Cir. 1996).

The Institute has cited case law to support the proposition that complainants preceding

with a disparate treatment claim must show as part of their prima facie case of intentional discrimination that they were treated differently from similarly situated individuals not a member of the protected class. See Palesch v. Mo. Comm'n on Human Rights, 233 F.3d 560, 568 (8th Cir. 2000); Clark, 218 F.3d at 918; Lang v. Star Herald, 107 F.3d 1308, 1312-13 (8th Cir. 1997). However, the cited cases were decided on summary judgment, and involved situations in which it was possible for similarly situated people to be treated differently. In this case, it is not possible for similarly situated people to be treated differently because Plaintiffs allege that all students are members of the same protected class. Cf. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n.13 (1973) (acknowledging that the facts will vary in Title VII cases and therefore, the required prima facie proof as articulated by the court is not necessarily applicable in every respect to differing factual situations).

The Court declines to dismiss the Complaint on the grounds advanced by the Institute at this early stage of the proceedings. The Plaintiffs have adequately noticed their cause of action in the Complaint, and should be allowed discovery to prove intentional discrimination by way of direct evidence, thereby obviating the need to meet the McDonnell Douglas test. Although it appears that the Institute is correct that most courts do not recognize a general claim for "educational malpractice," Alsides v. Brown Inst., Ltd., 592 N.W.2d 468, 471-73 (Minn. Ct. App. 1999), Plaintiffs in this case allege that they received an inferior education because of national origin discrimination. The Institute's Motion is denied, however, after the facts of the case have developed through discovery, the arguments may be renewed in the context of a summary judgment motion.

## IV. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant The Institute for New Americans' Amended Motion to Dismiss [Docket No. 32] is **DENIED**; and

2. Defendant Special School District No. 1's Amended Motion to Dismiss [Docket No. 28] is **DENIED**.

BY THE COURT:

　　　s/Ann D. Montgomery　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: March 13, 2006.